Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ZOE MANCE, on behalf of herself and all others similarly situated,<br><br>    *Plaintiff*,<br><br>v.<br><br>QUEST DIAGNOSTICS INCORPORATED VOLUNTARY SEPARATION AGREEMENT PLAN, and QUEST DIAGNOSTICS INCORPORATED, as PLAN ADMINISTRATOR,<br><br>    *Defendants*. | Civil Action No. 12-7361<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court by way of the motions for summary judgment filed by Defendant Quest Diagnostics Incorporated ("Quest" or "the Company"),[1] and by Plaintiff Zoe Mance. D.E. 71, 72. The parties filed briefs in opposition and in reply.[2] The Court reviewed all

---

[1] Quest denies the existence of the other named Defendant, "Quest Diagnostics Incorporated Voluntary Separation Agreement Plan," and that it acts as plan administrator of such a plan. Consequently, Quest's summary judgment briefs refer only to Quest, a single Defendant.

[2] The briefs will be referred to as follows: (1) Plaintiff's brief in support of its motion for partial summary judgment ("Plf's Br."), D.E. 72-1; (2) Defendant's brief in opposition to Plaintiff's motion for partial summary judgment (Def's Opp. Br.), D.E. 75; (3) Plaintiff's reply memorandum

1

submissions and held oral argument on both motions. For the reasons stated below, Defendants' motion for summary judgment is **GRANTED** and Plaintiff's motion for partial summary judgment is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### 1. Factual Background[3]

Plaintiff was employed by Quest for seven years. In July 2009, Plaintiff, who was a district sales manager at the time, was placed on a performance improvement plan (a "PIP") after receiving the overall rating of "development needed" on her year-end review. DSOMF ¶ 7. After failing to complete all of the corrective actions specified in the PIP, Plaintiff was involuntarily terminated due to poor performance on September 12, 2009. *Id.* ¶¶ 9-10. Plaintiff did not ask for, and did not receive, severance benefits when she was terminated. *Id.* ¶ 11; PSOMF ¶ 53. In addition, Plaintiff was unaware of any procedure for filing a claim for severance benefits. DSOMF ¶ 15.

Three years after she was terminated, Plaintiff filed this lawsuit alleging that through its pattern and practice of providing certain employees severance benefits, Quest unwittingly created a voluntary separation agreement benefits plan that is governed by the Employee Retirement Security Act of 1974 ("ERISA"). Plaintiff alleges that Quest failed to offer benefits that she was

---

of law in support of the motion for partial summary judgment ("Plf's Reply"), D.E. 81; (4) Defendant's brief in support of its motion for summary judgment ("Def's Br."), D.E. 71-1; (5) Plaintiff's memorandum of law in opposition to Defendant's motion for summary judgment (Plf's Opp. Br."), D.E. 76; and (6) Defendant's reply brief in support of its motion for summary judgment ("Def's Reply"), D.E. 80.

[3] The factual background is taken from the record, including the following sources: (1) Plaintiff's Statement of Undisputed Material Facts ("PSOMF"), D.E. 72-8; and (2) Defendant's Statement of Material Facts ("DSOMF") and supporting exhibits, D.E. 71.

entitled to receive under the plan. Quest does have a separate, ERISA-governed severance plan, which is not at issue.[4] Specifically, Plaintiff contends that instead of being terminated, she should have been provided with an opportunity to voluntarily resign and receive a monetary severance payment based in part on the length of her employment at Quest. Plf's Br. at 13. Plaintiff alleges that she was eligible under the plan because (1) she was a managerial employee, (2) who was viewed as underperforming and (3) management decided to terminate her employment relationship. *Id.* at 14.

It is not disputed that in 2002, Quest created a document entitled "Voluntary Separation Agreement Process" (the "VSA SOP" or the "SOP"). PSOMF ¶ 1. The VSA SOP was a confidential, internal document that "outline[d] a standard process for executing voluntary separation agreements throughout [Quest]" and set forth the procedures that must be followed "[i]n cases where *management decides it is in the Company's best interest* to terminate the employment relationship through a [VSA]." DSOMF ¶ 27, Ex. B at 83 (emphasis added). According to the SOP, the employee's manager or the local human resources ("HR") manager/director must go through an approval process before a voluntary separation agreement ("VSA") is even offered to an employee. Most Quest business units had dedicated local HR staff that reported to a regional leader. The regional leaders reported to corporate HR. *Id.* ¶ 3. From 2003 to 2013, David Norgard was Quest's Vice President of HR "and was responsible for all HR matters on a company-wide

---

[4] Quest's official severance plan is not applicable here as it only "provides severance benefits for employees terminated under specifically defined circumstances such as layoffs or force reductions." Def's Br. at 8 n.2. Plaintiff is not contending that the VSA Plan is a replacement for benefits under Quest's official severance pay plan. PSOMF ¶ 34.

basis." *Id.* ¶ 4. From 1999 to 2013, William Johnson was Senior Counsel for Quest and oversaw "all employment-related legal issues for the Company." *Id.*

If approved, the VSA typically, although not always, provides a lump-sum payment to the departing employee that "should be based on the appropriate dollar amount to allow the employee to begin an effective job search." *Id.* Ex. At 83. The payment could also include additional money for COBRA reimbursement, loan forgiveness, and outplacement services. *Id.* Next, the VSA SOP provides that Johnson must be contacted to draft the VSA. *Id.* A departing employee must agree to the offered terms and sign the VSA, which contained a release of potential claims and a confidentiality clause. DSOMF ¶¶ 33-34. In conjunction with the VSA SOP, Quest used a VSA Approvals Form (the "Approvals Form"). The Approvals Form must be completed before the VSA was offered to an employee and included a checklist as to the form and amount of consideration that would be offered. *See, e.g.*, Savits Decl. Ex. F. The VSA SOP is still utilized by Quest. PSOMF ¶ 25.

There is also no dispute that since 2000, Quest provided certain departing employees with a VSA. Quest maintains that VSAs are *ad hoc* arrangements with certain employees that were "used as a discretionary tool to secure a release of claims from a terminating employee in exchange for personalized consideration." Def's Br. at 7. Johnson testified that between 2000 and 2013, he prepared approximately 200 VSAs, or about ten to twelve per year.[5] DSOMF ¶ 35. Quest also alleges that whether to offer a VSA and the terms of the VSA were within the Company's sole

---

[5] Quest has approximately 45,000 employees. DSMOF ¶ 2. The parties did not indicate the average number of employees that Quest terminates involuntarily on an annual basis.

4

discretion. *Id.* Quest does not dispute that VSAs were at times used for performance-based terminations, however, "[d]efficient performance in and of itself . . . did not require the Company to offer an employee a VSA." DSOMF Ex. C at T125:18-24.

In the Second Amended Complaint ("SAC"), Plaintiff names ten former Quest employees that were allegedly eligible for and received a VSA, and who were similarly situated to Plaintiff. SAC ¶ 31. But Plaintiff's awareness of these employees and their VSAs is based on "rumors" and "innuendos." She has no personal knowledge of the circumstances regarding their termination from Quest or the terms of their VSAs. DSOMF ¶¶ 16, 18. Plaintiff also identified four employees who were supposedly eligible for VSA benefits, but like Plaintiff, were not provided with a VSA. SAC ¶¶ 32-33.

### 2. Procedural History

Plaintiff filed this lawsuit on November 30, 2012, alleging that Quest's pattern and practice of providing VSAs to departing employees created an employee welfare benefit plan within the meaning of ERISA, 29 U.S.C. § 1102, and that the decision to deny her a VSA is an ERISA violation pursuant to 29 U.S.C. § 1132(a)(1)(B). D.E. 1. Quest moved to dismiss Plaintiff's complaint, and Judge Cavanaugh granted the motion on September 11, 2013 because Plaintiff did not have standing to pursue her ERISA claim. D.E. 26. Plaintiff filed a motion for reconsideration. D.E. 28. On November 6, 2013, Judge Cavanaugh denied Plaintiff's motion for reconsideration on the merits but provided her with an opportunity to file an amended complaint. D.E. 30. Plaintiff filed an amended complaint on December 6, 2013, and on January 17, 2014, Quest filed a second

motion to dismiss. D.E. 31, 34. Judge Salas granted the motion because Plaintiff failed to establish statutory standing but provided her with a second opportunity to amend her pleading. D.E. 40.

Plaintiff filed her SAC on October 3, 2014, which Quest also moved to dismiss. D.E. 43, 45. Judge Salas, however, denied this motion. Judge Salas determined that the SAC cured the previously identified pleading deficiencies such that Plaintiff had alleged a "colorable claim to vested benefits." D.E. 49 at 1. Judge Salas determined that the critical point of contention concerned whether the VSA plan is an ERISA plan, which should be addressed through a motion for summary judgment, not a motion to dismiss. *Id.* As a result, Judge Salas scheduled a Rule 16 conference and permitted the parties to take limited discovery to resolve whether the VSA plan was in fact an ERISA plan. *Id.* at 2. The parties were permitted to take discovery as to the ten employees named in the SAC who were allegedly similarly situated to Plaintiff. The parties were also permitted to conduct discovery into the VSAs provided to twenty additional, randomly selected former employees. D.E. 54.

After this limited discovery concluded, the parties filed these motions for summary judgment. The Court will address the parties' specific arguments below, but generally, Quest maintains that summary judgment must be granted because the Company did not create an informal ERISA severance plan. D.E. 71. Plaintiff alleges that through its practice of providing VSAs to some employees, Quest unwittingly created an ERISA plan. Plaintiff alleges that summary judgment should be entered with the finding of an informal plan. D.E. 72.

## II. SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at

7

250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

### III. ANALYSIS

The Court is presented with a single issue: whether Quest's decision to provide some departing employees with a VSA created a plan under ERISA. ERISA applies to "any employee benefit plan if it is established or maintained . . . by any employer engaged in commerce." 29 U.S.C. § 1003(a). Severance plans may qualify as ERISA plans. *See Alston v. Atl. Elec. Co.*, 962 F. Supp. 616, 623 (D.N.J. 1997). ERISA requires employers to establish benefit plans through a written instrument (29 U.S.C. § 1102(a)), however, courts have concluded that ERISA plans may exist even with the absence of a written summary plan document. *See, e.g., Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried Emps.*, 974 F.2d 391, 399-400 (3d Cir. 1992).

The ERISA statutory framework, however, fails to define "plan." As a result, the Third Circuit has adopted the standard established by the Eleventh Circuit in *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982), for determining whether an informal ERISA plan exists. *Henglein*, 974 F.3d at 399-400. Pursuant to the *Donovan* standard, "a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended

8

benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Id.* at 399 (quoting *Donovan*, 688 F.2d at 1373). This standard is flexible. *Woerner v. Fram Grp. Operations, LLC*, 658 F. App'x 90, 95 (3d Cir. 2016). "The crucial factor in determining whether a plan has been established is whether the employer has expressed an intention to provide benefits on a regular and long-term basis." *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 290 (3d Cir. 2014) (quoting *Gruber v. Hubbard Bert Karl Weber, Inc.*, 159 F.3d 780, 789 (3d Cir. 1998)) (internal quotation marks omitted).

Whether an informal plan exists is a question of fact. *Deibler v. United Food & Commercial Workers' Local Union 23*, 973 F.2d 206, 209 (3d Cir. 1992). A court "should first determine what written representations were made by a putative sponsor to its employees over the course of their employment." *Henglein*, 974 F.2d at 400. The representations may encompass formal, distributed summary plan documents and "widely distributed informal documents." *Id.* If properly distributed written documents do not limit the available benefits,[6] a court must consider all evidence "that would indicate the presence or absence of an informal employee benefit plan," such as "internal or distributed documents, oral representations, existence of a fund or account to pay benefits, actual payment of benefits, the deliberate failure to correct known perceptions of a plan's existence, the reasonable understanding of employees, and the intentions of the putative sponsor." *Id.*

---

[6] Quest does not argue that the summary plan document for its official, ERISA-governed severance plan clearly limits the availability of other severance benefits such as those at issue here. As a result, the Court assumes that the official severance plan summary document does not have this type of language.

In determining whether an informal ERISA plan exists, courts must also be mindful of the United State Supreme Court's decision in *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 12 (1987).[7] In *Fort Halifax*, the Supreme Court determined that severance benefits do not implicate ERISA "unless they require the establishment and maintenance of a separate and ongoing administrative scheme." *Angst v. Mack Trucks, Inc.*, 969 F.2d 1530, 1538 (3d Cir. 1992). Such an administrative scheme "may arise where the employer, to determine the employee's eligibility for and level of benefits, must analyze each employee's particular circumstances in light of the appropriate criteria." *Shaver v. Siemens Corp.*, 670 F.3d 462, 477 (3d Cir. 2012) (quoting *Kulinski v. Medtronic Bio-Medicus, Inc.*, 21 F.3d 254, 257 (8th Cir. 1994)). Simple or mechanical determinations, however, do not create an administrative scheme. *Id.* Thus, a court should consider whether the plan requires "ongoing, particularized, administrative, analysis" for each employee, and if "a reasonable employee would perceive an ongoing commitment by the employer to provide some employee benefits." *Id.* (quoting *Kosakow v. New Rochelle Radiology Assocs.*, 274 F.3d 706, 737 (2d Cir. 2001)).

Turning to the case at hand, Plaintiff does not allege that Quest created or distributed a formal summary plan document regarding VSA benefits for poor performers. In addition, Plaintiff does not allege that Quest distributed any other documents pertaining to VSA benefits to its

---

[7] Some courts have questioned whether *Donovan* remains applicable in light of *Fort Halifax*. *See, e.g., Sandstrom v. Cultor Food Sci., Inc.*, 214 F.3d 795, 797 (7th Cir. 2000) ("It is not clear that the approach taken in [*Donovan*] is compatible with more recent decisions of the Supreme Court, which emphasize different considerations when asking whether an informal policy or arrangement is a 'plan.'"). The Third Circuit, however, applies *Donovan* and *Fort Halifax* together. *See Menkes*, 762 F.3d at 290; *Deibler*, 973 F.2d at 209.

employees. Plaintiff alleges only that Quest's informal pattern or practice of providing some employees with VSAs created an informal plan subject to ERISA. Plf's Br. at 19-20. As a result, the Court must determine whether the available evidence demonstrates that Quest created an informal plan and whether a reasonable person can ascertain its parameters. *Henglein*, 974 F.2d at 400.

At the outset, Plaintiff fails to provide evidence demonstrating that Quest expressed an intention to its employees to regularly provide severance benefits to underperforming personnel. Unlike many cases in which a court determined that an informal benefit plan existed, the record here is devoid of facts suggesting that poorly performing Quest employees expected to receive VSA benefits. *See, e.g., Deibler*, 973 F.2d at 210 (concluding that the available documents demonstrate an intent to establish a regular and ongoing severance plan). In fact, at oral argument Plaintiff's attorney stated that the majority of Quest employees did not know that a VSA plan existed and, therefore, did not know to ask for benefits.

In addition, Plaintiff did not learn about Quest's use of VSAs until the Spring of 2009 (DSOMF Ex. A at T14:2-9), almost seven years after she began working at Quest and months before she was terminated. PSOMF ¶ 51. Once she did learn about VSAs, Plaintiff's knowledge was extremely limited and inaccurate. Plaintiff only knew that VSA benefits were "available for managers and above, that [Quest] basically wanted to get rid of." DSMOF Ex. A at T14:5-7. Plaintiff never saw a copy of the VSA SOP before this case and only knows, through this litigation,

11

that the individuals named in the SAC received VSAs.[8] DSOMF ¶¶ 16, 24. Although Plaintiff's personal knowledge of the alleged VSA plan is not dispositive, it is probative of Quest employees' understanding (or lack thereof) of the Company's intent to provide severance benefits to all poor performers. This lack of representations by Quest to its employees countenances against finding an ERISA plan. *See, e.g., Kawski v. Johnson & Johnson*, 347 F. App'x 610, 612 (2d Cir. 2009) ("Although we have never found any one factor to be determinative in all cases, the absence of evidence of any promise of benefits made by Johnson & Johnson to its employees demonstrates that ERISA's purpose of enforcing employer commitments is not implicated here.") (internal quotations omitted); *Diak v. Dwyer, Costello & Knox, P.C.*, 33 F.3d 809, 811 (7th Cir. 1994) ("[W]e look to whether the decision 'constituted an expressed intention by the employer to provide benefits on a regular and long-term basis.'" (quoting *Wickman v. Nw. Nat'l Life Ins. Co.*, 908 F.2d 1077, 1083 (1st Cir.), *cert. denied* 498 U.S. 1013 (1990))); *see also Henglein*, 974 F.2d at 400 (noting that in deciding whether an informal ERISA plan exists, a court "should first determine what written representations were made by a putative sponsor to its employees over the course of their employment.").[9]

---

[8] Quest alleges that this suit is manufactured by Plaintiff's counsel after they received VSA related documents through discovery in an unrelated case. Def's Opp. Br. at 8-10. "There is a fair bit of judicial skepticism about 'informal plans' – specifically whether by allowing their concoction by imaginative counsel in litigation employers will actually be deterred from offering certain types of benefits." *Brines v. XTRA Corp.*, 304 F.3d 699, 702 (7th Cir. 2002).

[9] Plaintiff, citing to *Brown v. Ampco-Pittsburgh Corp.*, 876 F.2d 546 (6th Cir. 1989), emphasizes that an ERISA plan can exist even if it is completely confidential and the relevant employees are not aware of it. Plf's Reply at 3 n.2. Yet, pursuant to Third Circuit law, a court must consider what representations, if any, were made to employees by the alleged plan sponsor. *Henglein*, 974 F.2d at 400. Moreover, *Brown* is factually distinct from the present matter. There, the severance

As for the four *Donovan* factors, a reasonable person could ascertain the source of funding for VSA payments. The VSA SOP provides that the legal department is responsible for generating the severance check, however, it does not address what account the money should come from. DSMOF Ex. A at 84. Plaintiff contends that VSA benefits were paid from "Quest's general account and outplacement assistance benefits are generally paid directly by Quest to an outplacement assistance vendor." Plf's Br. at 9. Quest does not offer a contrary position and fails to address this factor. Paying benefits from a general fund is sufficient under *Donovan*; a company is not required to establish a separate fund. *See, e.g., Diak*, 33 F.3d at 813 (concluding that payment of benefits from general fund satisfied the requirement of an ascertainable source of funding). As a result, a reasonable person could ascertain the source of funding for the alleged VSA benefit plan.

The class of beneficiaries rarely seems to be a contested issue when determining whether an informal ERISA plan exists. *See, e.g., Deibler*, 973 F.2d at 210 (finding a regular plan for retiring union officers); *Brown v. Ampco-Pittsburgh Corp.*, 876 F.2d 546, 547 (6th Cir. 1989) (noting that the class of beneficiaries was terminated non-union salaried employees); *see also Shaver*, 670 F.3d at 479 (observing that if plan existed, it would include "legacy employees"); *Williams v. WCI Steel Co.*, 170 F.3d 598, 603 (6th Cir. 1999) (ruling that although informal plan did not exist, the class of beneficiaries was clear). Plaintiff argues that the class consists of

---

plan clearly set forth eligibility (permanent reduction in force for non-union salaried employees who were not yet 70 or otherwise eligible for an unreduced pension) and payment (specific weekly salary payments tied directly to length of service). 876 F.2d at 548.

13

"managerial employees viewed by management as underperforming and whom management has decided to separate from the company." Plf's Br. at 14.

Plaintiff's suggested class, however, is not supported by the record. The VSA SOP states that it applies to "[a]ll voluntary separation agreements executed company wide," and does not mention performance or limit itself to managerial-level workers. DSOMF Ex. B at 83. Instead, the SOP provides Quest with sole discretion to decide whether "it is in the Company's best interest to terminate the employment relationship through a [VSA]." *Id.* Further, of the thirty VSAs that were produced during discovery, Plaintiff alleges that only ten employees met her alleged eligibility criteria and were similarly situated.[10] PSOMF ¶ 40. Instead, the thirty VSAs produced through discovery demonstrate that Quest offered VSAs to employees for a variety of reasons, not just due to poor performance as claimed by Plaintiff. For example, Quest gave VSA benefits to Former Employee No. 15 upon his retirement "to persuade the employee to remain reasonably available after retirement and support a management transition." DSOMF ¶ 36. Former Employee No. 14 received VSA benefits when he voluntarily resigned due to family or personal reasons (*id.* ¶ 44), and Former Employee No. 20 received VSA benefits because he "expressed dissatisfaction with his current role." *Id.* ¶ 56.

---

[10] Plaintiff argues that "10 employees is actually a relative[ly] large number upon which to establish a pattern and practice compared to other cases that relied on smaller number of employees." Plf's Reply at 10 (citing *Deibler*, 973 F.2d at 210). In *Deibler*, however, the class of intended beneficiaries was not disputed. *Deibler*, 973 F.2d at 210. To the contrary, the written document expressly applied to union officers, which included the plaintiff.

Quest maintains that any employee could technically be eligible for a VSA and that they were offered for "any number or combination of reasons." Def's Opp. Br. at 22-23. The Company continues that the determination of which employees received a VSA is too amorphous and cannot be objectively defined. As a result, a reasonable person cannot ascertain the intended class of beneficiaries. *Id.* The Court agrees. The VSA SOP provides that severance benefits would only be offered when Quest decided that it was in "the Company's best interest." DSOMF Ex. B at 83. Therefore, the Court could find the "best interest" group as the intended class of beneficiaries. However, this intended class is difficult to determine through objective criteria. Obviously, the "best interest" of Quest is largely a subjective decision made from Quest's perspective.[11] Theoretically, all Quest employees were potential beneficiaries of the VSA. Yet, in reality, only a small subset of Quest employees agreed to a VSA with Quest. Between 2000 and 2013, Quest extended VSA benefits to approximately ten to twelve employees per year. DSOMF ¶ 35. Moreover, Quest states that VSAs were offered for a number of reasons and provided a list a potential reasons it may determine a VSA is warranted. Def's Br. at 13; DSOMF Ex. D at T59:7-19. This list fails to provide any clear guidance as to the parameters of the "best interest" group. Consequently, a reasonable person cannot fashion an objective set of criteria to determine if a Quest employee is eligible for VSA benefits.

Citing to *Deibler*, Plaintiff argues that "having discretion to determine beneficiary eligibility does not negate the existence of an ERISA plan." Plf's Opp. Br. at 24. In *Deibler*, the

---

[11] There is no indication in the record that Quest made such determinations based on prohibited characteristics, such as race or ethnicity.

15

court determined that an informal ERISA plan existed even though the plan administrator was tasked with determining whether a union official left the union for "a valid reason." *Deibler*, 973 F.2d at 210 n.6. The plan at issue in *Deibler*, however, clearly applied to retiring union officials and had a set formula for determining benefits. *Id.* at 210. Despite this discretionary determination, *i.e.* what constituted a "valid reason," the court in *Deibler* determined that the policy was predictable. *Id.* In contrast, the alleged plan here is anything but predictable. The standard to which Quest's discretion is to be applied in this case – Quest's determination that it is in its own best interest – is largely subjective and determined from Quest's perspective. Moreover, in *Deibler*, the eligible group was clearly defined – departing union officers. By comparison, the VSA plan may apply to any departing employee. Finally, the plan administrator in *Deibler* had one discretionary decision to make, that is whether the union officer left for a valid reason. Here, Quest looks to numerous and varying factors, none of which are mandatory considerations. Thus, the Court concludes that due to the lack of criteria for determining Quest's "best interest," there is no objectively defined class of intended beneficiaries.

A reasonable person is also unable to determine the intended benefits of the alleged informal plan.[12] Plaintiff argues that the benefits are (1) providing an employee with an

---

[12] Although not currently before the Court, the Court questions whether Plaintiff could realistically show that she was entitled to benefits under the VSA plan if the Court determined that an ERISA plan exists. As noted, Quest put forth evidence demonstrating that poor performance was not the sole consideration in determining eligible employees. Indeed, Quest has submitted evidence that in certain cases, poor performance was not even considered. More importantly, if Plaintiff applied for and was denied benefits under her proposed plan, she also faces a difficult task in appealing the denial because "[i]f an intended benefit is discretionary, . . . review of a denial of benefits will be for an abuse of discretion." *Henglein*, 974 F.2d at 401 (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)). It would be difficult for the Court, to say the least, to determine

opportunity to resign and (2) "a monetary component based, in whole or in part, on the employee's length of service." Plf's Br. at 13. But again, Plaintiff's argument is not supported by the record. The SOP states that the payment "generally should be based on the appropriate dollar amount to allow the employee to begin an effective job search." DSOMF Ex. B at 83. A VSA package could also include "amounts for [COBRA] reimbursement, loan forgiveness and outplacement services." *Id.* Although the SOP clarifies the possible options of benefits, it does not provide any objective formula or method for determining an appropriate payment. Moreover, the produced VSAs also fail to provide any indication as to how Quest determines "the appropriate dollar amount" or when to include any additional benefits. Finally, VSAs were bilaterally negotiated agreements. *See* DSOMF ¶ 28. This further demonstrates the difficulty of objectively ascertaining the specific benefits due to qualifying employees. Thus, a reasonable person is unable to objectively determine the monetary benefit that a poorly performing manager would be entitled to receive. *See, e.g.*, *Diak*, 33 F.3d at 812 ("Obviously, a plaintiff need not show the exact dollar amount she would expect to receive in benefits. However, there must be some evidence in the record from which the court can ascertain the benefits due under a plan. In all of the authorities [the plaintiff] cites, the amount of benefits due or the method of calculating benefits was clear on the face of the record."); *Hughes v. White*, 467 F. Supp. 2d 791, 801-02 (S.D. Ohio 2006) ("It is not enough that 'some form of benefits exist:' the compensation scheme should specify the extent of the benefits and the form in which they are to come." (quoting *Williams*, 170 F.3d at 603)).

---

that Quest abused its discretion in deciding that not offering Plaintiff a VSA was not in the Company's best interest.

17

Plaintiff argues that the benefits can be objectively determined because they are based, "in whole or in part" on an employee's length of service. Plf's Reply at 5. While Quest concedes that an employee's length of service *may* be a factor in determining severance benefits, this does not help a reasonable person ascertain the intended benefits. First, years of service is a potential factor but it is not a necessary factor. Second, even if an employee's time of service were a factor, there is no indication as to how this factor is to be weighed and considered. In fact, Plaintiff provides no evidence demonstrating how an employee's length of service is used to calculate VSA benefits (for example one week of benefits for each year of service), and admits that other factors play a role in the benefits determination. Plf's Br. at 5.

Finally, a reasonable person cannot determine the how to request benefits under the alleged ERISA plan. Plaintiff argues "that the procedures for obtaining benefits are embodied in the [VSA SOP], the VSA approvals form, and the testimony of Mr. Johnson and David Norgard." Plf's Br. at 15. Quest argues that there are no established procedures for requesting benefits under the alleged VSA plan. The Company also maintains that "[t]he record contains nothing regarding avenues to apply for or appeal a denial of VSA benefits, both hallmarks of an ERISA plan." Def's Br. at 30. Moreover, Plaintiff admitted that "she was not aware of any process through which she could have submitted a claim for VSA benefits." *Id.*

While the VSA SOP establishes the internal steps Quest must follow, Plaintiff fails to explain how employees or Quest initiated the process. In fact, the record demonstrates that there

18

was no set process; at times employees asked for and received a VSA,[13] other times the process was initiated by Quest, and on at least one occasion, a VSA was offered after an employee was terminated.  *See* DSOMF ¶ 36 (Former Employee No. 15 "was offered" a VSA); ¶ 38 (Former Employee No. 1 "was terminated and thus qualified for benefits under the Company's Severance Pay Plan" and was offered a VSA to receive benefits for an additional two week's salary); PSOMF ¶ 36 ("Some employees asked for [a VSA] and were not provided it, and some never asked and it was offered.").  Therefore, a reasonable person cannot ascertain the process for requesting benefits.  *See, e.g.*, *Williams*, 170 F.3d at 604 ("In our view, [*Donovan*] requires more than just the existence of an administrative scheme.  If a reasonable person cannot ascertain the claims procedures in a purported plan, then the plan is not an 'employee benefit plan' under ERISA."); *Diak*, 33 F.3d at 813 (finding that there was no evidence as to how employees "applied for" and received benefits or why others did not receive benefits); *Hughes*, 467 F. Supp. 2d at 802 (noting that argument that a reasonable person would know who to ask to receive benefits "is contradicted by the fact that Hughes did not seek out any one particular person to demand his benefits").  In fact, here Plaintiff did not know how to seek VSA benefits.

The Court does, however, conclude that pursuant to *Fort Halifax,* there was a separate administrative scheme to determine eligibility for VSA benefits.  Specifically, Quest created multi-layers of review to determine whether an offer of VSA benefits was appropriate.  This review process appears to have been created solely for the VSA program.  *See Kulinski*, 21 F.3d at 257

---

[13] The record is not clear that departing employees actually used the term "VSA" or other similar language when requesting VSA benefits.  In other words, the employees may have simply asked for some form of remuneration, which was ultimately paid through the VSA process.

("[A]n employer's need to create an administrative system may arise where the employer, to determine the employee's eligibility for and level of benefits, must analyze each employee's particular circumstances in light of the appropriate criteria."). While not extensive, the VSA SOP clearly sets forth the requirements Quest must complete before offering an employee a VSA: Quest had to determine whether it was in the Company's best interest to offer a VSA, decide what benefits the severance package should include, and seek the appropriate approvals. DSOMF Ex. B at 82-84. The SOP also established a procedure for making severance payments once approved. *Id.* Moreover, as noted, this was a separate process created to determine eligibility for VSA benefits. *Id.* In addition, Quest created the Approvals Form and required that the form be completed before VSA benefits were offered.

The existence of an administrative scheme alone, however, is not enough to conclude that an informal ERISA severance plan exists here. As already explained, a reasonable person cannot determine the class of intended beneficiaries, the intended benefits, or the process to request benefits under the alleged VSA benefit plan. Therefore, Quest did not unwittingly create an informal ERISA plan.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (D.E. 71) is **GRANTED** and Plaintiff's motion for partial summary judgment (D.E. 72) is **DENIED**. An appropriate form of order accompanies this opinion.

Dated: February 21, 2017

                                                    John Michael Vazquez, U.S.D.J.